**Charles Lee COOK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–00–01210–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 10, 2002.

Wesley H. Hocker, Robert A. Morrow, Spring, for appellant.

Rikke Burke Graber, Houston, for appellee.

Panel consists of Chief Justice BRISTER and Justices FOWLER and SEYMORE.

## OPINION

FOWLER, Justice.

Appellant, Charles Lee Cook, was charged with the misdemeanor offense of driving while intoxicated. The trial court denied his pretrial motion to suppress, and he subsequently entered a plea of guilty as part of a plea agreement. The trial court assessed punishment at 180 days in the Harris County Jail, probated for one year, and a $400 fine. Appellant appeals the denial of his motion to suppress on the grounds that the State failed to prove the reasonableness of the traffic stop. We affirm.

## FACTS

At the hearing on the motion to suppress, the trial court heard testimony from Officer Martin Cashmore, an officer with the Pasadena Police Department. He testified that on March 2, 2000, he had completed his regular shift from 2:00 p.m. to 10:00 p.m., and had begun patrolling Spencer Highway in connection with a DWI task force grant. At some point, Cashmore saw appellant's vehicle leave a bar in the 6200 block of Spencer at "a considerable rate of speed," move into the inside lane of Spencer traveling east, and pull into a gas station.[1] Cashmore continued driving east on Spencer for approximately a quarter mile, and then made a U-turn and returned west on Spencer.

Cashmore testified that, as he came back down Spencer, he saw appellant's vehicle leaving the gas station approximately 10–15 seconds after it had arrived, which aroused his suspicion. Cashmore then followed appellant's car as he turned onto an unmarked roadway. · Cashmore testified that he observed that appellant was driving "more or less all over the roadway," but he did not think he could stop him at that time because there were no marked lanes. Appellant turned onto another unmarked street, and Cashmore continued to follow him. Appellant then turned north onto Red Bluff, a street that is marked with a solid white line, a broken white line, and a solid yellow line.[2] Cash-

---

1. At trial, one witness said Cashmore was not patrolling the highway but was in the bar's parking lot talking with a bartender.

2. On cross-examination, Cashmore admitted that he did not include his observations of appellant prior to seeing appellant driving on Red Bluff in his report. He explained that he started his report where he believed he could show probable cause because of the marked roadways. Cashmore also admitted that, in

more continued to follow appellant, observing that he was failing to maintain his lane by "constantly" crossing over the broken white line into the other lane. After observing appellant for about two minutes, Cashmore conducted a traffic stop.

When Cashmore requested appellant's driver's license and insurance, he noted that appellant's speech was slurred and his breath smelled of alcohol. He administered several field sobriety tests, which appellant performed poorly. Cashmore determined at that time that appellant was intoxicated.

At the conclusion of the hearing, the trial court denied appellant's motion to suppress.

## ANALYSIS

On appeal, appellant contends that the trial court erred in denying appellant's motion to suppress because the state failed to prove the reasonableness of the warrantless stop as (1) a traffic stop for moving out of a marked lane when it is unsafe to do so; (2) a stop based on a reasonable suspicion that appellant was driving while intoxicated; or (3) a stop that was a reasonable exercise of the officer's "community caretaking function" to render assistance to appellant.

### 1. Standard of Review

 We conduct a bifurcated review of a trial court's suppression ruling; that is, we give almost total deference to the trial court's findings of fact, but conduct a de novo review of the trial court's application of law to those facts. *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App.2000); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App.2000); *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex.Crim.App.1997). When the trial court fails to file findings of

fact, we view the evidence in the light most favorable to the ruling, and assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Ross*, 32 S.W.3d at 856. Further, if the trial judge's decision is correct on any theory of law applicable to the case, the decision will be sustained. *Id.* Because the issue in this case does not involve a disagreement about the facts or the credibility of a witness, but rather whether the officer had reasonable suspicion to stop appellant, we review the issue de novo.

### 2. Reasonable Suspicion

 When a police officer stops a defendant without a warrant and without the defendant's consent, the State has the burden at a suppression hearing of proving the reasonableness of the stop. *Russell v. State*, 717 S.W.2d 7, 9–10 (Tex.Crim.App. 1986). A police officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks evidence rising to the level of probable cause. *Terry v. Ohio*, 392 U.S. 1, 29, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim.App.1997). The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts which, taken together with rational inferences from those facts, lead the officer to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. *Woods*, 956 S.W.2d at 38.

### 3. Application of Law to Facts

an earlier hearing, he followed appellant's vehicle after it left the gas station because he

wanted to see if the driver was possibly intoxicated.

■ Appellant maintains that Cashmore stopped him because Cashmore thought he had violated section 545.060 of the Texas Transportation Code. Section 545.060 requires an operator on a roadway divided into two or more clearly marked lanes for traffic to (1) drive, as nearly as practical, entirely within a single lane, and (2) not move from the lane unless that movement can be made safely. TEX. TRANS. CODE ANN. § 545.060(a) (Vernon 1999). Appellant contends that the officer had no reasonable basis upon which to stop appellant because he did not observe or testify that appellant's weaving across the broken white lines of the roadway was unsafe. In support of his argument, appellant relies on *Hernandez v. State*, 983 S.W.2d 867 (Tex. App.—Austin 1998, pet. ref'd), in which the court held that a violation of section 545.060 occurs only when a vehicle fails to stay within its lane *and* such movement is not safe or is not made safely. *Id.* at 871 (emphasis in original).

As in the present case, the defendant in *Hernandez* was stopped and arrested for driving while intoxicated, and on appeal challenged the denial of his motion to suppress the evidence of his intoxication on the grounds that the initial stop was not justified. *Id.* at 868. The testimony of the arresting officer at the hearing on the motion to suppress was that he observed the defendant's vehicle, which was on a five-lane roadway, slowly drift several inches into an adjacent lane on one occasion. *Id.* at 868–69. The court determined that, given the evidence of a single drift into an adjacent lane, the State failed to carry its burden of demonstrating the reasonableness of the stop on the basis of a suspicion that the defendant violated section 545.060(a) of the Transportation Code. *Id.* at 872.[3]

This case is distinguishable from *Hernandez*. Here, rather than one instance of crossing over the broken white traffic line into the adjacent lane, we have a driver who was "constantly" crossing over the broken white line into the adjacent lane. Appellant contends that this is a distinction without a difference, because that alone does not demonstrate that appellant's movements were inherently unsafe, particularly since there was no evidence that he was a danger to himself or others. However, we have previously declined to interpret section 545.060 so as to permit a driver to weave across lanes of traffic so long as no other vehicles are in the vicinity.[4] *Gajewski v. State*, 944 S.W.2d 450, 453 (Tex.App.—Houston [14th Dist.] 1997, no pet.). In *Gajewski*, the appellant was stopped for crossing the center line into the lane of oncoming traffic two or three times and crossing the broken line of traffic once. *Id.* Here, the weaving was more constant that in *Gajewski*. We conclude that this sort of behavior is sufficiently unsafe so that the officer was not required to wait until appellant placed himself or others in immediate peril as a result of his erratic driving.

■ We also note that Cashmore observed more than just weaving. He observed appellant leaving a bar at a consid-

---

3. We do not necessarily agree with the reasoning in *Hernandez* or the conclusion that a single instance of weaving does not constitute a violation of section 545.060. In any event, the present case is distinguishable on its facts.

4. The vast majority of drivers do not weave when they drive. They are taught to stay in the center of their lane. Consequently, after a certain point, as in this case, weaving is an indication that something is amiss. One could logically assume that the driver is inattentive, tired, incompetent, intoxicated, or even joking. None of these alternatives is desirable and they each present hazards for the weaving driver as well as for his fellow drivers on the road.

erable rate of speed, pulling into a gas station and leaving within 10–15 seconds, and driving "all over the roadway" on an unmarked road prior to turning onto a marked roadway, where he was observed constantly weaving across the broken white traffic lanes. Section 545.060(a) prohibits moving from one marked lane to another "unless that movement can be made safely." We hold that, based on the totality of the circumstances, the officer's observations and testimony are sufficient to demonstrate that appellant was not moving from one lane to another safely, and therefore the officer was justified in stopping appellant based on a reasonable suspicion that he was in violation of section 545.060(a).[5]

 The officer was also justified in stopping appellant based on a reasonable suspicion of driving while intoxicated. As we noted in *Gajewski,* even if the fact that no other vehicles were near appellant may be a defense to a traffic citation, "it does not negate a stop based on a reasonable suspicion that the driver of the motor vehicle has lost control of his mental and physical faculties by the ingesting of alcohol and/or other drugs." 944 S.W.2d at 453. Appellant argues that the officer's stop was unjustified because there is no evidence that appellant's failure to maintain a single lane was unsafe, and the officer did not testify that he suspected appellant was intoxicated, citing *State v. Tarvin,* 972 S.W.2d 910, 911 (Tex.App.—Waco 1998, pet. ref'd), and *State v. Cerny,* 28 S.W.3d 796, 799 (Tex.App.—Corpus Christi 2000, no pet.).

As we have noted, Officer Cashmore testified that his suspicions were aroused after he saw appellant leave the bar, pull into the gas station, and leave the gas station within 10–15 seconds of his arrival. On cross-examination, Cashmore stated that he began following appellant because he thought he might be intoxicated. This testimony contradicts appellant's assertion that the officer did not testify that he suspected appellant was possibly intoxicated. Further, Cashmore subsequently saw the appellant drive "all over the roadway" of an unmarked road prior to witnessing his unsafe driving on the marked roadway. While erratic or unsafe driving on an unmarked roadway may not violate section 545.060, we find that here it does provide sufficient basis upon which Cashmore could reasonably suspect that appellant was driving while intoxicated, particularly in light of the other factors we have mentioned. We therefore find, based on the totality of the facts and the rational inferences to be drawn from those facts, that appellant's driving behavior was sufficient to raise a reasonable suspicion of driving while intoxicated in the mind of a reasonable police officer.

In reaching this decision we are mindful of *Tarvin* and *Cerny,* the cases appellant cited to us. We find *Tarvin* and *Cerny* distinguishable and appellant's reliance on these cases misplaced. In *Tarvin,* the court held that the officer lacked reasonable suspicion to stop Tarvin for drifting over the solid white line on the right side of the roadway two or three times if there was no evidence that he crossed into another lane of traffic, and the officer did not

---

**5.** An officer may lawfully stop a motorist who commits a traffic violation. *McVickers v. State,* 874 S.W.2d 662, 664 (Tex.Crim.App. 1993). However, we note that there is no requirement that a traffic regulation is actually violated; it is sufficient to show that the officer reasonably believed that a violation was in progress. *Powell v. State,* 5 S.W.3d 369, 376–77 (Tex.App.—Texarkana 1999, pet. ref'd), *cert. denied,* 529 U.S. 1116, 120 S.Ct. 1976, 146 L.Ed.2d 805 (2000); *Gajewski v. State,* 944 S.W.2d 450, 452 (Tex.App.—Houston [14th Dist.] 1997, no writ).

testify to any other driving infractions. 972 S.W.2d at 912. The *Tarvin* court distinguished its case from others in which a stop was justified in part because of weaving, when the activity involved something else such as *"going into another lane of traffic,* high rates of speed, or erratic speed changes." *Id.* (emphasis added). As we discussed above, appellant here was observed constantly weaving into the adjacent lane, and additionally was observed leaving a bar at a considerable rate of speed, pulling in and abruptly leaving a gas station, and driving "all over the roadway" of an unmarked road prior to being stopped. Indeed, the *Tarvin* case actually supports our decision, as the court there noted that even weaving within one's own lane of traffic can justify an investigatory stop "when that weaving is erratic, unsafe, or tends to indicate intoxication or other criminal activity." *Id.* As we have stated, appellant was not merely weaving within his own lane, but was weaving into the adjacent lane in an unsafe manner, and had previously been observed driving in a manner that aroused the officer's suspicions.

*Cerny* also does not assist appellant. In that case, Cerny was stopped for failing to maintain a single lane and was arrested for driving while intoxicated. The officer testified that he did not stop Cerny for any reason other than the failure to maintain a single lane. The evidence established that Cerny was weaving somewhat within his own lane. There was no evidence that his actions were unsafe. 28 S.W.3d at 801. Applying the reasoning of *Tarvin* and *Hernandez,* the court concluded that the evidence did not support a finding that the officer had a reasonable belief that Cerny had violated section 545.060. *Id.*

Finally, in *Gajewski,* we noted that the sole basis for the traffic stop was appellant's weaving between the lanes of traffic, but held that this conduct was sufficient to create a reasonable suspicion to believe that the appellant was driving the motor vehicle while intoxicated, or that some activity out of the ordinary had occurred or was occurring that would justify the temporary detention. 944 S.W.2d at 452. As we explained:

> Traffic laws are designed to protect not only the safety of other persons in other vehicles but also the safety of the driver in question. By weaving across the center line three different times, in addition to weaving across and into another lane, appellant aroused the suspicion of the arresting officer. By his own behavior, appellant was telling the officer that he was unable to safely operate a motor vehicle, and that if he continued to operate the vehicle appellant was a danger to himself or others.

*Id.* at 453; *see also Townsend v. State,* 813 S.W.2d 181, 185 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd) ("Indeed, it can reasonably be argued that one of the functions of patrol officers is to investigate what they reasonably perceive to be erratic or unsafe driving by motorists on public streets."). Here, appellant's conduct in leaving a bar at a considerable rate of speed, pulling into and abruptly leaving a gas station, and driving "all over the roadway" of an unmarked road prior to being observed constantly weaving into the adjacent lane likewise told the officer that appellant was unable to operate his vehicle safely.[6]

Given the totality of the circumstances, we hold that there was sufficient evidence to justify an investigatory detention of ap-

---

**6.** Because of our disposition of the issue, we need not reach appellant's contention that the

officer could not have based the stop on his "community caretaker" function.

pellant. The judgment of the trial court is affirmed.

BRISTER, C.J., concurring.

BRISTER, Chief Justice, concurring.

I concur in the judgment and write separately only to note my disagreement with *Hernandez v. State,* 983 S.W.2d 867 (Tex. App.—Austin 1998, pet. ref'd). I do not believe late-night drivers are entitled to one free "weave" before they may be stopped temporarily for suspicion of intoxication.

A growing number of appellate opinions distinguish *Hernandez,* allowing a traffic stop if, rather than crossing a broken white traffic line once, the driver:

- Crosses a double yellow line once. *Texas Dept. of Public Safety v. Chang,* 994 S.W.2d 875, 878 (Tex. App.—Austin 1999, no pet.); *Griffin v. State,* 54 S.W.3d 820, 823 (Tex. App.—Texarkana 2001, pet. filed).
- Crosses a shoulder stripe twice, *Le Card v. State,* No. 01–98–00171–CR, 1999 WL 1018162, at *8 (Tex.App.—Houston [1st Dist.] 1999, pet. filed), or three times, *Guevara v. State,* No. 13–00–755–CR, 2001 WL 1002468, at *3 (Tex.App.—Corpus Christi 2001, no pet.).
- Drives up speedily and crosses the shoulder stripe once. *Benavides v. State,* No. 14–99–00478–CR, 2001 WL 101787 (Tex.App.—Houston [14th Dist.] Feb. 8, 2001, pet. ref'd)

(not designated for publication), 2001 WL 101787, at *2.

- Drives slightly above the speed limit and straddles a lane marker briefly. *Adame v. State,* No. 03–00–00442–CR, 2001 WL 359230 (Tex.App.—Austin April 12, 2001, no pet.) (not designated for publication), 2001 WL 359230, at *3.

These kinds of distinctions make it difficult for police officers to know when they can stop and investigate a potential drunk driver. I see no reason to make this complicated. There may be good explanations, but there are no good excuses for weaving out of one's lane late at night.

I recognize that a panel of this Court has agreed with *Hernandez,* although distinguishing it in that case. *See Benavides v. State,* No. 14–99–00478–CR, 2001 WL 101787 (Tex.App.—Houston [14th Dist.] Feb. 8, 2001, pet. ref'd) (not designated for publication), 2001 WL 101787, at *2. And I agree with the majority the additional observations by the officer in this case again make *Hernandez* irrelevant. Nevertheless, I believe it is time to stop distinguishing *Hernandez* and start disagreeing with it.