In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana




______________________________




No. 06-03 -00012 -CV


______________________________






INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, Appellant




V.




JEROME EDWARDS, SR., AND MARY EDWARDS, Appellees





 



On Appeal from the 11th Judicial District Court


Harris County, Texas


Trial Court No. 2002-09227





 







Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Carter




MEMORANDUM OPINION




 The appellant, the Insurance Company of the State of Pennsylvania, and the appellees, Jerome Edwards, Sr., and Mary
Edwards, have filed a joint motion informing this Court that they have successfully mediated their dispute. The parties ask
us to vacate the trial court's judgment and dismiss this appeal. 

 Pursuant to Rule 42.1 of the Texas Rules of Appellate Procedure, we grant the joint motion of the parties. See Tex. R.
App. P. 42.1. The trial court's judgment is vacated and the appeal is dismissed.



 Jack Carter

 Justice



Date Submitted: August 26, 2003

Date Decided: August 27, 2003



val="before"/>
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00165-CR

                                                ______________________________

 

 

                                     THE STATE OF
TEXAS, Appellant

 

                                                                V.

 

                                     PAT RAY WILSON, JR., Appellee

 

 

                                                                                                  


 

 

                                            On Appeal from the County Court at Law

                                                             Fannin County, Texas

                                                            Trial
Court No. 44861

 

                                                                   
                               

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            While
Corporal William Abbott of the Bonham Police Department worked the evening
shift December 25, 2009, alone in his police vehicle, it appeared to Abbott
that a vehicle driven by Pat Ray Wilson, Jr., emerged from the parking lot of a
local bar, waited for a different police vehicle on the public road to go by,
crossed the public road into the entry drive of a local automobile dealershipnot
then open for businessand remained there for several minutes, before pulling
forward and back a number of times, re-entering the public road, and proceeding
in a direction to leave Bonham.  Abbott
followed Wilsons vehicle.  Abbott
testified that, after he saw Wilsons vehicle cross the fog line, he activated
his emergency lights and stopped Wilsons vehicle.  Abbott arrested Wilson for driving while
intoxicated (DWI).  From a pretrial order
suppressing the evidence from the traffic stop, the State appeals.  Because the trial court granted the motion to
suppress based only on its finding that Wilson did not commit a traffic offense
and expressly refused to consider the broader question of whetherbased on the
totality of the circumstancesAbbott had reasonable suspicion that Wilson was
driving while intoxicated, we reverse the suppression order and remand this
matter to the trial court for further proceedings consistent with this opinion.

            We review a
trial courts decision on a motion to suppress evidence by applying a
bifurcated standard of review.  Graves v. State, 307 S.W.3d 483, 489
(Tex. App.Texarkana 2010, pet. refd); Rogers
v. State, 291 S.W.3d 148, 151 (Tex. App.Texarkana 2009, pet. refd).  While we defer to the trial court on its
determination of historical facts and credibility, we review de novo its
application of the law and determination on questions not turning on
credibility.  Carmouche v. State,
10 S.W.3d 323, 332 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997); Villarreal
v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Graves, 307 S.W.3d at 489.  We
also afford deference to a trial courts application of law to fact questions,
also known as mixed questions of law and fact, if the resolution of those
questions turns on an evaluation of credibility and demeanor.  Guzman,
985 S.W.2d at 89.

            At the hearing on the motion to
suppress, Abbott testified that he was patrolling the streets at nighttime on
Christmas when he observed Wilson in the parking lot of a local bar called the
American Legion.[1]  Wilson waited for another patrol car to pass
him on the main road before exiting the bar parking lot.  Abbott stated, Once I saw [the other patrol
car] pass in front of the vehicle, the driver immediately drove across Highway
56 into a closed Chrysler dealership. Abbott interpreted Wilsons driving as
an evasive action, but opined that he did not have reasonable suspicion to
stop Wilson for DWI at this point. 
Wilson remained situated in front of the Chrysler dealership until the
other patrol car was out of view, started kind of pulling forward and back,
and then eventually just kind of went back out on the roadway and proceeded
westbound on 56 out of town.  Abbott
followed Wilson, believed he observed a traffic violation, and initiated a
traffic stop.  When asked to summarize
his reasons for stopping Wilson, Abbott testified:

 

Basically,
. . . the totality of the circumstances was the driver leaving the bar and his
behavior once he saw a patrol officer in the area to make quick evasive actions
to go into a place of business that was closed, pretend like he was looking for
the cars, which wasthat Ive seen several times during my ten years here in Bonham
for like [sic] people who are possibly intoxicated.  With those two things right there, with the
traffic violation, is the reason I stopped the subject believing that he was
possibly intoxicated.

 

            The
following exchange suggests confusion concerning whether the trial court could
consider evidence other than the traffic violation:

            THE COURT:             Lets hold up. 
Let me get down to the point that Im going to have to rule on.  The fact that he was apparentlyor it
appeared to be that he was pulling out of the American Legion is one factor
that could be considered in reasonable suspicion.  Is that what youre saying?

 

            [The
State]:     It is one of the circumstances
that can be --

 

            THE COURT:             The fact that he pulled across the road to the Chrysler
dealership, possibly trying to avoid the police officers vision who had just
passed, is another factor in the reasonable --

 

            [The
State]:     Yes, in light of the fact that
Bonham Chrysler was closed at the time. 

 

            THE COURT:             And my understanding of the law is that even if he said
ah-hah, theres a possible DWI.  Im
going to stop him, that doesnt make any difference as long as there is a
traffic violation or something that is dangerous to give him reasonable
suspicion to stop the vehicle . . . . So then, the -- this motion to suppress
is going to be based upon the driving of the defendant at the time.

 

            [The
State]:    No,
Your Honor, its actually based off of Corporal Abbotts testimony about the
entire --

 

            THE
COURT:             No, taking the entirety
into consideration --

 

            [The
State]:     Correct. 

 

            THE COURT:  -- if theres no traffic violation, even
despite these other two factors, then theres no reason to stop him.  In other words, if he had driven lets stay
with the assumption that he did not violate any traffic laws, then there would
be no reasonable suspicion to stop him. 
Is that correct?

 

            [The
State]:     No, Your Honor, because
Corporal Abbott actually testified as to why the defendants actions were still
unsafe . . . .

 

After this discussion, the trial court reviewed the
videotape, decided that no traffic violation had been committed, and granted
the motion to suppress on that basis. 
The following discussion ensued:

            [Wilsons Attorney]:               May I ask the Court if the Court
has found that there was reasonable suspicion, or is it correct in saying that
the Court finds there was not reasonable suspicion to make a stop --

 

            THE COURT:             I found there was not reasonable suspicion because there
was no violation of the traffic laws. 

 

            [The
State]:     Your Honor, thats not an issue
--

 

            THE
COURT:             No, I didnt say
that.  I said reasonable suspicion to
stop the defendant. 

 

            [Wilsons
Attorney]:   For any offense?

 

            THE
COURT:             For any offense.

 

            [The
State]:     For any traffic code
violation?

 

            THE COURT:             Any traffic violation. 
Thats what were finding.  Thats
the only thing were ruling on at this time, is traffic code violations.  Whether he was intoxicated or not has no
bearing on this ruling.  Whether or not
he intended to stop him for suspicion of DWI has very little or almost no
bearing on this ruling. 

 

            [Wilsons
Attorney]:   Im confused, Your Honor.

 

            THE COURT:             Thats based upon this Aviles versus State where it says
examining the validity of the traffic stop is immaterial but the officer had an
ulterior motive for stopping.  Whether or
not he had reasonable suspicion to stop him for violating a traffic
offense.  If the Court of Appeals finds
that my viewing of this video was incorrect, then theyll reverse me. 

 

            [Wilsons
Attorney]:   But, Judge, so --

 

            THE
COURT:             Im not going to find
him guilty of DWI.

 

            [Wilsons Attorney]:   No, Your Honor, and maybe Im not clear on
what Im requesting.  Im not asking the
Court to rule as to whether he was intoxicated or not, or any level beyond a
reasonable doubt.  Im asking the Court
to rule as to whether the Officer has a suspicion to make a traffic stop based
on driving -- the offense of driving while intoxicated.  Because I submit to the Court that if an
officer has in his mind specific clues to lead the Court to believe -- Im
sorry --  clues that lead to reasonable
suspicion of driving while intoxicated, then the officer can make a lawful
traffic stop.  If the officer in his mind
feels that he has reasonable suspicion of an intoxicated driver, I dont think
-- I certainly dont think it was found in this case, but --

 

            THE COURT:            Well,
there would have to be more articulable facts, like weaving or -- you know,
within the lane of traffic or weaving between the lane of traffic, or failure
to maintaining [sic] a single lane of traffic in a dangerous manner.  Just failing to maintain a single lane of
traffic in a safe manner is not reason to stop somebody.  But failing to maintain -- you know, there
would have to [be] some other facts.  Im
not ready to make a ruling on this. 
Before we make -- sign these rulings, if youll submit to me some type
of law where I need to make that ruling, Ill do it.  But I dont think thats proper in this
case.  The only thing at this time is
that were dealing with is reasonable suspicion to stop him.  If he didnt have reasonable suspicion to
stop him, then all the evidence that he gather[ed] in this stop is inadmissible
. . . . The only thing that he did wrong was these two violations.  He drove on the shoulder -- what do they call
it, fog line?  Is that what they call it?

 

            [The
State]:     The white line. 

 

            THE
COURT:             And I didnt see
it.  And then you get to the point, was
it dangerous to do so. 

 

            [The State]:     Your Honor, actually the danger only applies to section 545.060.  There is no danger requirement in
545.058.  

 

            THE COURT:             That is probably correct.  But if the -- well, theres no need.  Ive made my ruling.

 

From this discussion, it appears the trial court believed the
officer could not stop Wilson unless a traffic violation was committed.  In fact, the trial courts conclusions of law
state, This Court refused to make a ruling or finding on whether or not there
was reasonable suspicion to stop Defendant for Driving While Intoxicated.  

            The Fourth
Amendment prohibits unreasonable searches and seizures.  U.S. Const.
amend. IV.  This prohibition extends to brief
investigatory stops such as the stop of [a] vehicle. United States v. Cortez, 449 U.S. 411, 417 (1981); see Corbin v. State, 85 S.W.3d 272, 276
(Tex. Crim. App. 2002).

            Law
enforcement officers may stop and briefly detain persons suspected of criminal
activity on less information than is constitutionally required for probable
cause to arrest.  Terry v. Ohio, 392 U.S. 1, 22 (1968).  To initiate an investigative stop, the
officer must possess a reasonable suspicion based on specific, articulable
facts that, in light of the officers experience and general knowledge, would
lead the officer to reasonably conclude the person detained actually is, has
been, or soon will be engaged in criminal activity.  United
States v. Sokolow, 490 U.S. 1, 10 (1989); Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).  These facts must be more than a mere hunch or
suspicion.  Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).

            An
investigative stop must be objectively reasonable in light of the particular
circumstances of the case.  Maryland v. Wilson, 519 U.S. 408, 411
(1997); Terry, 392 U.S. at 2122; Corbin, 85 S.W.3d at 276.  Whether the officers suspicion was
reasonable is evaluated based on an objective standard that disregards any
subjective intent of the officer making the stop and looks solely to whether an
objective basis for the stop exists.  Ford v. State, 158 S.W.3d 488, 492 (Tex.
Crim. App. 2005).  It should also be
based on the totality of the circumstances. 
See Derichsweiler v. State,
No. PD-0176-10, 2011 WL 255299, at *4 (Tex. Crim. App. Jan. 26, 2011).

            The Texas
Court of Criminal Appeals recently clarified that the test for reasonable
suspicion does not require the facts to point to the actual or impending
commission of a particular Penal Code offense.  Id. at *5. 
That court explained:

Unlike the case with probable cause to justify
an arrest, it is not a sine qua non of reasonable suspicion that a
detaining officer be able to pinpoint a particular penal infraction.  The reason is simple but fundamental.  A brief investigative detention constitutes a
significantly lesser intrusion upon the privacy and integrity of the person
than a full-blown custodial arrest . . . . 
[T]he requirement that there be some indication that the unusual
activity is related to crime does
not necessarily mean that the information must lead inexorably to the
conclusion that a particular and identifiable penal code offense is imminent.  It is enough to satisfy the lesser standard of
reasonable suspicion that the information is sufficiently detailed and
reliablei.e., it
supports more than an inarticulate hunch or intuitionto suggest that something of
an apparently criminal nature is brewing.

 

Id. at *6.  More
recently than that, our high criminal court reasserted that the totality of the
circumstances need not even point to only criminal conduct:

The possibility of an innocent explanation does not
deprive the officer of the capacity to entertain reasonable suspicion of
criminal conduct.  Indeed, the principal
function of [an] investigation is to resolve that very ambiguity . . . .

 

State v. Castleberry,
No. PD-0354-10, 2011 WL 709697, at *6 (Tex. Crim. App. Mar. 02, 2011) (quoting Woods v. State, 956 S.W.2d 33, 37 (Tex.
Crim. App. 1997)).

            Although the
question of whether Abbott had reasonable suspicion that Wilson was driving
while intoxicated was before the trial court, it refused to rule on the
issue.  Instead, the trial court appears
to have believed that Wilson was required to commit a traffic violation in
order for the officer to have reasonable suspicion.  This is not the law.  An officer is justified in stopping a driver
based on a reasonable suspicion of DWI, even in the absence of a traffic
violation.  James v. State, 102 S.W.3d 162, 172 (Tex. App.Fort Worth 2003,
pet. refd); Cook v. State, 63 S.W.3d
924, 929 (Tex. App.Houston [14th Dist.] 2002, pet. refd) (even if defendants
driving did not constitute traffic violation, it provided reasonable suspicion
defendant was driving while intoxicated).

 

 

 

 

 

 

 

            We reverse
the trial courts judgment so that it may rule on the issue of whether Abbott
had reasonable suspicion to stop Wilson for DWI.  We reverse the judgment and remand to the
trial court for proceedings consistent with this opinion. 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          March
16, 2011

Date Decided:             March
29, 2011

 

Do Not Publish











[1]Abbott
later testified that he assumed Wilson came from the American Legion parking
lot; his view of the parking lot was obstructed.