# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00393-CR

### Katherine Frances Hankins, Appellant

### v.

### The State of Texas, Appellee

### FROM THE COUNTY COURT AT LAW NO. 3 OF TRAVIS COUNTY
### NO. 677205, HONORABLE DAVID CRAIN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After her motion to suppress evidence was overruled, appellant Katherine Frances Hankins pleaded no contest to an information accusing her of misdemeanor driving while intoxicated. *See* Tex. Pen. Code Ann. § 49.04 (West 2003). The county court at law assessed punishment at 120 days' confinement and a $2000 fine, but suspended imposition of sentence and placed her on community supervision for two years. Appellant contends on appeal that she was seized and evidence was obtained in violation of the United States and Texas Constitutions and Texas Code of Criminal Procedure art. 38.23. *See* U.S. Const. amends. IV, XIV; Tex. Const. art. 1, § 9; Tex. Code Crim. Proc. Ann. art. 38.23 (West 2005) (evidence obtained in violation of state or federal constitution inadmissible). For the reasons that follow, we affirm the judgment.

## FACTUAL BACKGROUND

At the suppression hearing, Austin Police Officer Adam Johnson testified that just before three o'clock on the morning of August 10, 2004, he observed a car make a "very abrupt lane change" across two lanes of traffic on Sixth Street. His suspicion aroused because of the hour, location, and manner of the driving, Johnson followed the car as it made a quick turn onto Brazos Street. By the time he turned onto Brazos, Johnson saw that the car was already parked. As he and his partner watched, appellant, the female driver, exchanged seats with her male passenger. The passenger exited the vehicle and appellant "scooted" across the seat to the passenger side. As the officers backed up to position their vehicle near appellant's car, one of the officers leaned out of the window and said, "What's going on?" Johnson got out of the police car and approached appellant's car.

Johnson testified that no one was in the driver's seat, and he did not say or do anything to make the occupants think they could not leave. The male passenger told Johnson that he was going to ride his bicycle home. Johnson observed a bicycle on the back of the car. As Johnson approached appellant on the passenger side to ask her what was going on, she responded to his question in speech so slurred that he could not understand her. Her eyes were bloodshot and watery, and Johnson believed her to be intoxicated. Appellant told Johnson that she had come from the Ritz, a bar on Sixth Street, and had consumed several beers and shots. She pulled over because she realized that she should not be driving. After she failed the standard sobriety tests, Johnson placed her under arrest.

2

The male passenger, Timothy Carr, also testified at the hearing. Carr testified that when they were approached by the police officers, he had the keys to the ignition in his hand and was in the driver's seat. In response to the question, "What's going on?," Carr testified that he told the officers that he was going to drive appellant home. He testified that the officers backed up to appellant's car and told them to "wait there." He testified, "I was told I had to stay there."

## ANALYSIS

On appeal, appellant contends that the situation escalated from a consensual encounter to a seizure the moment Carr and appellant "yielded to the officers' show of authority." Appellant urges that the officers did not witness a traffic violation or any act that would suggest criminal activity was afoot and that therefore the officers' actions constituted a seizure without reasonable suspicion in violation of the Fourth and Fourteenth Amendments of the United States Constitution, Article 1, Section 9 of the Texas Constitution, and Texas Code of Criminal Procedure article 38.23. *See* U.S. Const. amends. IV, XIV; Tex. Const. art. 1, § 9; Tex. Code Crim. Proc. Ann. art. 38.23.

We conduct a bifurcated review of a trial court's suppression ruling, giving almost total deference to the trial court's findings of fact, but conducting a *de novo* review of the trial court's application of law to those facts. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). When the trial court fails to file findings of fact, we view the evidence in the light most favorable to the ruling and assume the trial court made implicit findings of fact that support its ruling as long

as those findings are supported by the record. *Ross*, 32 S.W.3d at 855. Further, if the trial court's decision is correct on any theory of law applicable to the case, the decision will be sustained. *Id*. at 856.

Citing numerous cases relating to traffic "stops," appellant complains that the officers did not witness any conduct that would constitute a traffic violation sufficient to justify a stop, nor did they witness anything that would make them suspect that criminal activity was afoot. But as the trial court explained in overruling the motion to suppress at the close of evidence,

> [T]he officer did not stop the car. The car stopped itself. And there was enough to hang the hat on there for why he stopped his car and went over there and saw what he called erratic driving. And he saw the car stop and saw the driver move over as the police officer pulled down the street behind her. And I think that's enough reason to approach the driver. And the driver was over on the other side. And when he asked the driver a question and she slurred her speech, to the point of not even intelligible [sic], I think that's reason enough to continue the investigation at that point. And, of course, it's not much in dispute what happened after that.

Appellant's case is distinguishable from those in which a citizen is pulled over for a traffic violation. *See*, *e.g.*, *Corbin v. State*, 85 S.W.3d 272, 274-75 (Tex. Crim. App. 2002). Not all encounters with the police implicate the Fourth Amendment's protection against unreasonable seizures. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997). There are three distinct categories of interactions between police officers and citizens: encounters, investigative detentions, and arrests. *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002). An encounter needs no justification, a detention requires reasonable suspicion, and an arrest must be supported by probable cause. *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). Police officers do not violate either the state or federal constitution by

4

approaching an individual on the street or in another public place and questioning him. *Perez*, 85 S.W.3d at 819.

In this case, the officers observed erratic driving. To be sure, an abrupt lane change across two lanes may not be a traffic violation sufficient to trigger a traffic stop. *See Hernandez v. State*, 983 S.W.2d 867, 869 (Tex. App.—Austin 1998, pet. ref'd) (vehicle crossing a lane marker a single time did not support reasonable suspicion of driver's intoxication). *But see Cook v. State*, 63 S.W.3d 924, 928 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd); *Dowler v. State*, 44 S.W.3d 666, 670-71 (Tex. App.—Austin 2001, pet. ref'd). But the officers did not initiate a stop. As the trial court judge observed, appellant and her companion "stopped themselves." The only question remaining then is whether the officers were permitted to approach the vehicle to investigate further. We hold that they were entitled to approach and make the inquiry as they did.

Asking questions is an essential part of police investigations. *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 185 (2004); *see also Adams v. Williams*, 407 U.S. 143, 146 (1972) ("A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.").

The officer did not violate either the Fourth Amendment of the United States Constitution or Article 1, Section 9 of the Texas Constitution by merely approaching appellant to ask her questions after she had stopped on the street. *See*, *e.g.*, *Terry*, 392 U.S. at 31 (Harlan, J., concurring); *Florida v. Royer*, 460 U.S. 491, 497 (1983); *Perez*, 85 S.W.3d at 819. Indeed, when the officer first approached and questioned the occupants of the car by inquiring, "What's going

5

on?," no seizure had occurred and thus appellant's constitutional safeguards were not invoked. *Terry*, 392 U.S. at 19 n.16 ("Obviously, not all personal intercourse between policemen and citizens involve 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.").

Even accepting as credible the testimony of the defense witness, the officers' conduct was no more intrusive than necessary to effectuate the investigative inquiry allowed by the *Terry* line of cases. *See Royer*, 409 U.S. at 504. The officer's response and questioning was a common-sense inquiry and, under the totality of the circumstances, did not violate either the state or federal constitution.

## CONCLUSION

Given the totality of the circumstances, we hold that the trial court did not err in overruling the motion to suppress. The judgment of the trial court is affirmed.

 

 

_____

Jan P. Patterson, Justice

Before Justices B. A. Smith, Patterson and Puryear

Affirmed

Filed:   June 30, 2006

Do Not Publish