02-09-424-CR















 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00424-CR

 

 


 
 
 John Robert Whidden
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

------------

 

FROM THE
396th District Court OF Tarrant
COUNTY

------------

MEMORANDUM OPINION[1]

------------

I. 
Introduction

Appellant
John Robert Whidden appeals his conviction for driving while intoxicated.  In one point, Whidden complains that the
trial court erred by overruling his motion to suppress.  Specifically, Whidden complains that the
trial court erred by finding that the arresting officer in this case had
reasonable suspicion to initiate a traffic stop.  We will affirm.

II.  Background

Following
an anonymous tip and after observing Whidden driving, police officer James Intia initiated a stop of Whidden’s
vehicle at roughly 12:30 a.m., October 19, 2008.  Whidden was arrested and later charged with
driving while intoxicated.  Whidden filed
a motion to suppress, alleging that Intia lacked
reasonable suspicion to stop him.  After
a hearing, the trial court denied Whidden’s
motion.  Afterwards, Whidden entered a
plea of guilty to the charge against him but reserved his right to appeal the
trial court’s ruling on the motion to suppress.

Intia
testified at the suppression hearing.  Intia said that he works as a police officer for the City
of Keller, Texas.  He has been a police
officer in Keller for approximately five and a half years.  According to Intia,
he was working the night shift when he received a dispatch call regarding Whidden’s SUV.  The
call notified him that a white SUV, traveling at high speed, was heading
westbound on Keller Parkway.  Intia was less than a quarter mile away at the time.  As Intia approached
the intersection of South Main Street and Keller Parkway, he observed “a white
SUV, which appeared to be traveling at a high rate of speed.”  After initiating his overhead lights to
circumvent traffic, Intia turned off his overhead
lights and briefly followed the SUV, which he described as a match for the
vehicle description he had been given by dispatch.  Intia said that
although he did not track Whidden’s vehicle with a
radar detector, “from [his] training and experience, it appeared that [Whidden]
was going at a speed greater than the posted speed limit.”  Intia said that he
followed Whidden “just to add reasonable suspicion” to his stop and that he
observed Whidden “fail to maintain a single lane and [Whidden] almost [strike]
another vehicle as well.”  Intia described Whidden’s alleged
failure to maintain a lane as a reaction to him having approached the vehicle
in front of him too quickly: “[Whidden] was coming up fast behind that vehicle
in front of him, and he -- I saw his brakes go on and he looked really close to
the vehicle that was in front of him. 
Then he kind of swerved over to the right because his right tires went
over the [solid white] line.”  Intia said that Whidden nearly collided with the vehicle in
front of him.

By Intia’s account, Whidden had violated multiple traffic laws,
including: speeding, failure to maintain a single lane, and following the
vehicle in front of him too closely. 
When asked why he stopped Whidden, Intia said,
“Because of his driving behavior.  From
my training and experience, it’s just one of the signs of a possible
intoxicated driver.”  On
cross-examination, Intia maintained that the reason
he initiated a stop of Whidden’s vehicle was because
of Whidden’s erratic driving, including the multiple
traffic violations he allegedly observed Whidden engage in.  The State also played a dashboard video for
the trial judge from Intia’s in-car camera showing Intia following Whidden briefly before initiating the stop.

          After Whidden’s
plea, the trial court assessed punishment at ten years’ confinement but
suspended imposition of the sentence and placed Whidden on community
supervision for a period of four years. 
This appeal followed.

III.  Discussion

In his
sole point, Whidden argues that the trial court erred by denying his motion to
suppress.  Specifically, Whidden argues
that the trial court erred by finding that Intia had
reasonable suspicion to stop him.  We
disagree.

A.      Standard
of Review

We
review a trial court’s ruling on a motion to suppress evidence under a
bifurcated standard of review.  Amador v. State, 221
S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997).  In reviewing the trial
court’s decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State,
118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses
and the weight to be given their testimony. 
Wiede v. State, 214 S.W.3d 17,
24–25 (Tex. Crim. App. 2007); State v.
Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), modified on other grounds by State v. Cullen, 195 S.W.3d 696 (Tex.
Crim. App. 2006).  Therefore, we
give almost total deference to the trial court’s rulings on (1) questions
of historical fact, even if the trial court’s determination of those facts was
not based on an evaluation of credibility and demeanor, and
(2) application-of-law-to-fact questions that turn on an evaluation of
credibility and demeanor.  Amador, 221 S.W.3d at
673; Montanez v. State, 195 S.W.3d
101, 108–09 (Tex. Crim. App. 2006); Johnson
v. State, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).  But when application-of-law-to-fact questions
do not turn on the credibility and demeanor of the witnesses, we review the
trial court’s rulings on those questions de novo.  Amador, 221 S.W.3d at 673; Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652–53.

          Stated another way, when reviewing the
trial court’s ruling on a motion to suppress, we must view the evidence in the
light most favorable to the trial court’s ruling.  Wiede,
214 S.W.3d at 24; State v. Kelly, 204
S.W.3d 808, 818 (Tex. Crim. App. 2006). 
When the trial court makes explicit fact findings, we determine whether
the evidence, when viewed in the light most favorable to the trial court’s
ruling, supports those fact findings.  Kelly, 204 S.W.3d at
818–19.  We then review the trial
court’s legal ruling de novo unless its explicit fact findings that are
supported by the record are also dispositive of the legal ruling.  Id. at 818.

          When the record is silent on the
reasons for the trial court’s ruling, or when there are no explicit fact
findings and neither party timely requested findings and conclusions from the
trial court, we imply the necessary fact findings that would support the trial
court’s ruling if the evidence, viewed in the light most favorable to the trial
court’s ruling, supports those findings. 
State v. Garcia-Cantu, 253
S.W.3d 236, 241 (Tex. Crim. App. 2008); see
Wiede, 214 S.W.3d at 25.  We then review the trial court’s legal ruling
de novo unless the implied fact findings supported by the record are also
dispositive of the legal ruling.  Kelly, 204 S.W.3d at
819.

          We must uphold the trial court’s
ruling if it is supported by the record and correct under any theory of law
applicable to the case, even if the trial court gave the wrong reason for its
ruling.  State v. Stevens, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); Armendariz v. State, 123 S.W.3d 401, 404 (Tex.
Crim. App. 2003), cert. denied, 541
U.S. 974 (2004).

B.      Legality
of the Stop

The
Fourth Amendment[2] protects
against unreasonable searches and seizures. 
U.S. Const. amend. IV.  To suppress evidence because of an
alleged Fourth Amendment violation, the defendant bears the initial burden of
producing evidence that rebuts the presumption of proper police conduct.  Torres
v. State, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  A defendant satisfies this burden by
establishing that a search or seizure occurred without a warrant.  Torres,
182 S.W.3d at 902; Ford,
158 S.W.3d at 492.  Once
the defendant has made this showing, the burden of proof shifts to the State,
which must then establish that the government agent conducted the search or
seizure pursuant to a warrant or that the agent acted reasonably.  Torres,
182 S.W.3d at 902; Ford,
158 S.W.3d at 492.

The
Supreme Court has held that a detention is reasonable under the Fourth
Amendment if the government agent reasonably suspects a person of engaging in
criminal activity.  Terry v. Ohio, 392 U.S. 1, 22, 88 S. Ct.
1868, 1880 (1968); Carmouche v. State, 10 S.W.3d 323, 328 (Tex. Crim.
App. 2000).  Reasonable suspicion
exists when, based on the totality of the circumstances, the officer has
specific, articulable facts that when combined with
rational inferences from those facts, would lead the officer to reasonably
conclude that a particular person is, has been, or soon will be engaged in
criminal activity.  Ford, 158 S.W.3d at 492–93.  This is an objective standard that disregards
any subjective intent of the officer making the stop and looks solely to
whether an objective basis for the stop exists.  Id. at 492.

It
is well settled that a traffic
violation
committed in an officer’s presence authorizes an initial stop.  Armitage v. State,
637 S.W.2d 936, 939 (Tex. Crim. App. 1982)  Furthermore, an officer is justified in
stopping a driver based upon a reasonable suspicion of driving while
intoxicated, even in the absence of a traffic violation.  James v.
State, 102 S.W.3d 162, 172 (Tex. App.—Fort Worth 2003, pet. ref’d); McQuarters v. State,
58 S.W.3d 250, 255 (Tex. App.—Fort Worth 2001, pet. ref’d)
(stop justified based on reasonable suspicion that defendant, who crossed the
left lane stripe twice, was intoxicated); Cook
v. State, 63 S.W.3d 924, 929 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d) (reasoning that even if defendant’s driving did not
constitute a traffic violation, it did provide reasonable suspicion that the
defendant was driving while intoxicated).  To be sure, erratic or unsafe driving may
furnish a reasonable suspicion that the driver is intoxicated, regardless of
any evidence regarding whether a violation of a specific traffic law occurred.  Cook,
63 S.W.3d at 929; McQuarters,
58 S.W.3d at 255; Fox v. State, 900 S.W.2d 345, 347 (Tex. App.—Fort Worth 1995, pet. dism’d) (driver’s conduct sufficient to justify stop based
upon reasonable suspicion that something out of the ordinary was occurring,
even though no single act was illegal).

In
this case, Intia testified that although he observed
Whidden commit multiple traffic violations, the reason he stopped Whidden was “[b]ecause of his driving behavior.  From my training and experience, it’s just
one of the signs of a possible intoxicated driver.”  Intia testified
that he observed Whidden driving too fast, following another vehicle too
closely, and that Whidden’s excessive speed and
failure to maintain a proper distance from the vehicle in front of him caused
him to forcefully apply his brakes and swerve over the shoulder’s solid-white
line.  Furthermore, Intia’s
attention toward Whidden was based on information supplied by an anonymous
citizen informant whose information about the vehicle, the driver’s excessive
speed, and location were verified when Intia spotted Whidden’s SUV.  See Brother v. State, 166 S.W.3d 255,
257 (Tex. Crim. App. 2005), cert. denied,
546 U.S. 1150 (2006) (“The factual basis for stopping a vehicle need not arise
from the officer’s personal observation, but may be supplied by information
acquired from another person.”). 
Additionally, this court has reviewed Intia’s
dashboard video of Whidden’s driving.  The video supports Intia’s
testimony that Whidden followed the vehicle in front of him too closely—forcing
him to suddenly apply his brakes and weave over the
shoulder stripe.  Viewing the facts in a
light most favorable to the trial court’s ruling and viewing the totality of
the circumstances, we conclude that Intia possessed
specific, articulable facts that when combined with
rational inferences from those facts, would have led him to reasonably conclude
that Whidden was engaged in the criminal activity of driving while intoxicated.  See Ford,
158 S.W.3d at 492–93. Thus, the trial court did not
err by denying Whidden’s motion to suppress.  We overrule Whidden’s
sole point.

IV.  Conclusion

          Having overruled Whidden’s
sole point, we affirm the trial court’s judgment.

 

 

 

BILL MEIER
JUSTICE

 

PANEL: 
LIVINGSTON, C.J.;
MCCOY and MEIER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  February 10, 2011











[1]See Tex. R. App. P. 47.4.





[2]
Where, as in this case, the appellant has not separately briefed state and
federal constitutional claims, we assume that the appellant claims no greater
protection under the state constitution than that provided by the federal
constitution.  Varnes v. State, 63 S.W.3d 824,
829 (Tex. App.—Houston [14th Dist.] 2001, no pet.).  Therefore, we will analyze Whidden’s claim solely under the Fourth Amendment of the
United States Constitution, following guidelines set by the United States
Supreme Court in interpreting the Fourth Amendment.  See State v. Guzman, 959 S.W.2d 631,
633–34 (Tex. Crim. App. 1998).