# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00133-CR

**Zenaida Aguilar, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY
## NO. C-1-CR-09-222161,
## HONORABLE NANCY WRIGHT HOHENGARTEN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following denial of her motion to suppress evidence, appellant Zenaida Aguilar pleaded nolo contendere to the offense of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04 (West 2011). The trial court sentenced Aguilar to six days' confinement in county jail and a 90-day driver's license suspension. In a single issue on appeal, Aguilar asserts that the trial court abused its discretion in denying her motion to suppress evidence obtained as a result of what she contends was an illegal traffic stop. We will affirm.

## BACKGROUND

At the hearing on the motion to suppress, the trial court heard evidence that at approximately 12:50 a.m. on December 19, 2009 Deputy Marc Taub of the Travis County Sheriff's Office observed a blue Chevy Tahoe fail to drive in a single marked lane while traveling on the east

frontage road of the 8800 block of IH-35. Specifically, Taub testified, "I observed a vehicle swerve out of its lane to the right and started occupying two lanes at that moment and went back to the left lane." Taub observed the vehicle swerving to the left and to the right in its lane before entering the highway. Taub testified that traffic in the area at that time was moderate to heavy and that there were numerous vehicles in the vicinity of the Tahoe. Once the vehicle entered the highway, Taub observed that it was traveling between 40 to 45 miles per hour, approximately 20 miles per hour below the posted speed limit of 60 miles per hour. Although the vehicle remained in its lane on the highway, Taub testified that it swerved within the lane, at times moving all the way to the white line causing him to be concerned that it would strike vehicles in the adjacent lane. Taub followed the Tahoe for one to two miles and continued to observe it traveling at a slow speed, "going left to right and even at one point looked like it was going to sideswipe a semi-truck."

Based on his observations, Taub believed the vehicle was being driven in an unsafe manner and was concerned that it was going to "start driving again in two lanes with heavy traffic" on IH-35. Taub testified that he suspected at the time that the driver of the vehicle might be intoxicated. This belief was based on the fact that the vehicle was traveling at an "excessively slow" speed and was unable to stay in a single lane, which in his experience was consistent with an intoxicated driver. Taub testified that based on his observations, both of the failure to stay in one lane and the swerving within one lane while driving at an excessively slow speed, he decided to make the traffic stop.

Taub activated his lights, intending to cause the Tahoe to pull over on the shoulder. The vehicle continued on, passing several safe locations to pull over, and finally stopped in an area

2

adjacent to an entrance ramp, a location Taub considered dangerous. Feeling it was unsafe to get out of his vehicle, Taub used his public address system to instruct the driver to pull forward and to the right. The driver failed to respond to these instructions, causing Taub to get out and approach the Tahoe where he instructed the driver to pull forward and to the right. Instead, the driver turned on the left turn signal and, rather than exiting the highway, began driving on IH-35. The driver then moved to the right, exited at Yager Lane, passed a side street, and finally came to a stop in the roadway blocking the outside lane.

On cross-examination, Taub admitted that on his police report and probable cause affidavit he did not state that he suspected that the driver of the vehicle was intoxicated. He did, however, affirm that he was suspicious of the manner in which she was driving, specifically having "some suspicions that there may be possibly something wrong inside the vehicle" caused by "characteristics [he] observed of her driving." During cross-examination the trial court also had an opportunity to view the dashboard camera recording Taub made of the Tahoe in the minutes preceding the stop.

At the conclusion of the hearing, the trial court denied the motion to suppress. After Aguilar's motion to suppress was denied, she pleaded nolo contendere to driving while intoxicated and was sentenced as noted above. This appeal followed.

**STANDARD OF REVIEW**

"A trial court's ruling on a motion to suppress, like any ruling on the admission of evidence, is subject to review on appeal for abuse of discretion." *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)).

3

"In other words, the trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case." *Id.* (quoting *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008)). We reverse the ruling "only if it is outside the zone of reasonable disagreement." *Dixon*, 206 S.W.3d at 590. "In reviewing a trial court's ruling on a motion to suppress, appellate courts must view all of the evidence in the light most favorable to the trial court's ruling." *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). When, as here, the trial court files no findings of fact or conclusions of law, we assume that the trial court made implicit findings necessary to support its ultimate ruling so long as the implied findings are supported by the record. *See Valtierra v. State*, 310 S.W.3d 442, 449 (Tex. Crim. App. 2010) (stating that "[d]espite the lack of an explicit factual finding" on contested fact issue, reviewing courts "still must view the totality of the facts in the light most favorable to the trial court's ultimate ruling").

## DISCUSSION

In her sole issue on appeal, Aguilar asserts that the trial court abused its discretion in denying her motion to suppress because, in Aguilar's view, the arresting officer did not have reasonable suspicion to stop her. Specifically, Aguilar contends that irrespective of whether Taub had available to him sufficient facts to give rise to a reasonable suspicion that Aguilar was intoxicated, he did not have available to him sufficient articulable facts to give rise to a reasonable suspicion that she had committed a specific traffic offense—violation of transportation code section 545.060 regarding driving within a single lane. *See* Tex. Transp. Code Ann. § 545.060 (West 2011) (driving on roadway laned for traffic).

4

An officer may initiate a traffic stop if he reasonably suspects that the driver has violated the law. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has, or soon will be, engaged in criminal activity. *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008); *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). In making this determination, we consider the totality of the circumstances. *Ford*, 158 S.W.3d at 492; *Garcia*, 43 S.W.3d at 530.

We first consider Aguilar's contention that Taub did not observe an actual traffic violation. Aguilar asserts that she did not commit the offense of failure to maintain a single lane because, during the time that she "drifted into the adjacent lane," there were no other vehicles in that lane of travel, and Taub's vehicle was well behind hers. We understand Aguilar to argue that although she drifted into the adjacent lane and therefore failed to maintain a single lane, she did not commit the offense of failure to maintain a single lane because, due to a lack of traffic, her movement was not unsafe. *See* Tex. Transp. Code Ann. § 545.060(a) (providing that driver "shall drive as nearly as practical entirely within a single lane and may not move from the lane unless that movement can be made *safely*" (emphasis added)); *Fowler v. State*, 266 S.W.3d 498, 504-05 (Tex. App.—Fort Worth 2008, pet. ref'd) (reversing trial court's denial of motion to suppress because there was no evidence that defendant's failure to maintain single lane was done unsafely).

Contrary to the inferences Aguilar draws from the evidence, the record supports the conclusion that Aguilar violated transportation code section 545.060. Taub testified that he observed vehicles around Aguilar's car when it swerved out of its lane on the frontage road and that traffic was

"moderate to heavy with vehicles in the area." Taub also testified that Aguilar continued weaving within her lane on the highway, giving him reason to suspect that she was about to violate section 545.060 again. The video from Taub's dashboard camera demonstrates that there were other cars both on the frontage road and on the highway, and that traffic was, as Taub testified, moderate to heavy. Because there was traffic in the vicinity of Aguilar's vehicle, the trial court did not abuse its discretion in finding that Taub had articulated facts sufficient to give rise to a reasonable suspicion that Aguilar committed the traffic offense of failure to maintain a single lane when she traveled out of her lane in traffic, i.e., unsafely, on the frontage road and continued to weave within her lane once on the highway. *See Cook v. State*, 63 S.W.3d 924, 928 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (concluding that officer was not required to wait to initiate traffic stop "until appellant placed himself or others in immediate peril as a result of his erratic driving").

Moreover, while Taub testified that he believed Aguilar had committed a traffic offense, he also testified that he conducted the stop because he believed, based on everything he had observed, that Aguilar was driving while intoxicated. There is no requirement that a traffic regulation must be violated in order for an officer to have sufficient reasonable suspicion to justify a traffic stop. *See James v. State*, 102 S.W.3d 163, 173 (Tex. App.—Fort Worth 2003, pet. ref'd). Rather, an officer may be justified in stopping a vehicle based on a reasonable suspicion of driving while intoxicated. *See Curtis v. State*, 238 S.W.3d 376, 379 (Tex. Crim. App. 2007). The trial court did not abuse its discretion in denying the motion to suppress if, based on the totality of the circumstances, Taub had reasonable suspicion to believe Aguilar was driving while intoxicated. *See Ramos*, 245 S.W.3d at 418 (appellate court must uphold trial court's ruling "if it is reasonably

6

supported by the record and is correct under any theory of law applicable to the case"). The evidence of erratic driving at a speed well below the posted limit, along with the additional evidence that the driving was occurring on a Saturday morning at approximately 12:50 a.m. and that Taub had, in his two years in the Travis County Sheriff's Office DWI Enforcement Unit, observed these to be common traits of intoxicated drivers, supports the trial court's finding that Taub had reasonable suspicion to believe that Aguilar was driving while intoxicated. *See Curtis*, 238 S.W.3d at 381 (upholding reasonableness of traffic stop on similar facts); *Gajewski v. State*, 944 S.W.2d 450, 453 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (concluding, on similar facts, that even though driver might not have committed traffic offense did not mean that officer lacked reasonable suspicion to believe driver was intoxicated).

Aguilar argues that evidence of driving while intoxicated cannot supply the reasonable suspicion required to make the traffic stop here because in his affidavit for warrant of arrest and detention, Taub stated that he stopped Aguilar for the offense of failing to maintain a single lane. She further argues that the record clearly shows that suspicion of driving while intoxicated "was not a basis for [Taub's] stopping [Aguilar]." As an initial matter, Aguilar cites no authority for her contention that, when ruling on a motion to suppress, the trial court is limited to considering only the ground stated in the officer's affidavit for warrant of arrest and detention. Rather, the test is whether the objective facts would have justified an officer in Taub's shoes in detaining Aguilar. *See State v. Elias*, 339 S.W.3d 667, 675 (Tex. Crim. App. 2011). The evidence, including Taub's testimony and the video from his dashboard camera, measured from an objective standard, support the conclusion that there existed at least a reasonable suspicion that Aguilar was

7

driving while intoxicated, justifying the stop. Moreover, Taub testified that he decided to make the traffic stop based on *both* his observation of her failure to maintain a single lane and his suspicion that she was driving while intoxicated. Accordingly, we cannot conclude that the trial court abused its discretion in denying the motion to suppress. We overrule Aguilar's sole issue on appeal.

## CONCLUSION

We affirm the judgment of the trial court.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed: March 2, 2012

Do Not Publish