

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-09-00424-CR

JOHN ROBERT WHIDDEN                                           APPELLANT

V.

THE STATE OF TEXAS                                                STATE

------------

## FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. INTRODUCTION

Appellant John Robert Whidden appeals his conviction for driving while intoxicated. In one point, Whidden complains that the trial court erred by overruling his motion to suppress. Specifically, Whidden complains that the trial court erred by finding that the arresting officer in this case had reasonable suspicion to initiate a traffic stop. We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. BACKGROUND

Following an anonymous tip and after observing Whidden driving, police officer James Intia initiated a stop of Whidden's vehicle at roughly 12:30 a.m., October 19, 2008. Whidden was arrested and later charged with driving while intoxicated. Whidden filed a motion to suppress, alleging that Intia lacked reasonable suspicion to stop him. After a hearing, the trial court denied Whidden's motion. Afterwards, Whidden entered a plea of guilty to the charge against him but reserved his right to appeal the trial court's ruling on the motion to suppress.

Intia testified at the suppression hearing. Intia said that he works as a police officer for the City of Keller, Texas. He has been a police officer in Keller for approximately five and a half years. According to Intia, he was working the night shift when he received a dispatch call regarding Whidden's SUV. The call notified him that a white SUV, traveling at high speed, was heading westbound on Keller Parkway. Intia was less than a quarter mile away at the time. As Intia approached the intersection of South Main Street and Keller Parkway, he observed "a white SUV, which appeared to be traveling at a high rate of speed." After initiating his overhead lights to circumvent traffic, Intia turned off his overhead lights and briefly followed the SUV, which he described as a match for the vehicle description he had been given by dispatch. Intia said that although he did not track Whidden's vehicle with a radar detector, "from [his] training and experience, it appeared that [Whidden] was going at a speed greater than the

2

posted speed limit." Intia said that he followed Whidden "just to add reasonable suspicion" to his stop and that he observed Whidden "fail to maintain a single lane and [Whidden] almost [strike] another vehicle as well." Intia described Whidden's alleged failure to maintain a lane as a reaction to him having approached the vehicle in front of him too quickly: "[Whidden] was coming up fast behind that vehicle in front of him, and he -- I saw his brakes go on and he looked really close to the vehicle that was in front of him. Then he kind of swerved over to the right because his right tires went over the [solid white] line." Intia said that Whidden nearly collided with the vehicle in front of him.

By Intia's account, Whidden had violated multiple traffic laws, including: speeding, failure to maintain a single lane, and following the vehicle in front of him too closely. When asked why he stopped Whidden, Intia said, "Because of his driving behavior. From my training and experience, it's just one of the signs of a possible intoxicated driver." On cross-examination, Intia maintained that the reason he initiated a stop of Whidden's vehicle was because of Whidden's erratic driving, including the multiple traffic violations he allegedly observed Whidden engage in. The State also played a dashboard video for the trial judge from Intia's in-car camera showing Intia following Whidden briefly before initiating the stop.

After Whidden's plea, the trial court assessed punishment at ten years' confinement but suspended imposition of the sentence and placed Whidden on community supervision for a period of four years. This appeal followed.

3

## III. DISCUSSION

In his sole point, Whidden argues that the trial court erred by denying his motion to suppress. Specifically, Whidden argues that the trial court erred by finding that Intia had reasonable suspicion to stop him. We disagree.

### A.   Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility

4

and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

5

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

## B.    Legality of the Stop

The Fourth Amendment[2] protects against unreasonable searches and seizures. U.S. Const. amend. IV. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Torres*, 182 S.W.3d at 902; *Ford*, 158 S.W.3d at 492. Once the defendant has made this showing, the burden of proof shifts to the State, which must then establish that the government agent conducted the search or seizure pursuant to a warrant or that the agent acted reasonably. *Torres*, 182 S.W.3d at 902; *Ford*, 158 S.W.3d at 492.

---

[2] Where, as in this case, the appellant has not separately briefed state and federal constitutional claims, we assume that the appellant claims no greater protection under the state constitution than that provided by the federal constitution. *Varnes v. State*, 63 S.W.3d 824, 829 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Therefore, we will analyze Whidden's claim solely under the Fourth Amendment of the United States Constitution, following guidelines set by the United States Supreme Court in interpreting the Fourth Amendment. *See State v. Guzman*, 959 S.W.2d 631, 633–34 (Tex. Crim. App. 1998).

The Supreme Court has held that a detention is reasonable under the Fourth Amendment if the government agent reasonably suspects a person of engaging in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State,* 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead the officer to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492–93. This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id*. at 492.

It is well settled that a traffic violation committed in an officer's presence authorizes an initial stop. *Armitage v. State*, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982) Furthermore, an officer is justified in stopping a driver based upon a reasonable suspicion of driving while intoxicated, even in the absence of a traffic violation. *James v. State,* 102 S.W.3d 162, 172 (Tex. App.—Fort Worth 2003, pet. ref'd); *McQuarters v. State*, 58 S.W.3d 250, 255 (Tex. App.—Fort Worth 2001, pet. ref'd) (stop justified based on reasonable suspicion that defendant, who crossed the left lane stripe twice, was intoxicated); *Cook v. State*, 63 S.W.3d 924, 929 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (reasoning that even if defendant's driving did not constitute a traffic violation, it did provide reasonable suspicion that the defendant was driving while intoxicated). To be sure, erratic or

7

unsafe driving may furnish a reasonable suspicion that the driver is intoxicated, regardless of any evidence regarding whether a violation of a specific traffic law occurred. *Cook*, 63 S.W.3d at 929; *McQuarters*, 58 S.W.3d at 255; *Fox v. State*, 900 S.W.2d 345, 347 (Tex. App.—Fort Worth 1995, pet. dism'd) (driver's conduct sufficient to justify stop based upon reasonable suspicion that something out of the ordinary was occurring, even though no single act was illegal).

In this case, Intia testified that although he observed Whidden commit multiple traffic violations, the reason he stopped Whidden was "[b]ecause of his driving behavior. From my training and experience, it's just one of the signs of a possible intoxicated driver." Intia testified that he observed Whidden driving too fast, following another vehicle too closely, and that Whidden's excessive speed and failure to maintain a proper distance from the vehicle in front of him caused him to forcefully apply his brakes and swerve over the shoulder's solid-white line. Furthermore, Intia's attention toward Whidden was based on information supplied by an anonymous citizen informant whose information about the vehicle, the driver's excessive speed, and location were verified when Intia spotted Whidden's SUV. *See Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005), *cert. denied*, 546 U.S. 1150 (2006) ("The factual basis for stopping a vehicle need not arise from the officer's personal observation, but may be supplied by information acquired from another person."). Additionally, this court has reviewed Intia's dashboard video of Whidden's driving. The video supports Intia's testimony that Whidden followed the vehicle in front of him too closely—

8

forcing him to suddenly apply his brakes and weave over the shoulder stripe. Viewing the facts in a light most favorable to the trial court's ruling and viewing the totality of the circumstances, we conclude that Intia possessed specific, articulable facts that when combined with rational inferences from those facts, would have led him to reasonably conclude that Whidden was engaged in the criminal activity of driving while intoxicated. *See Ford*, 158 S.W.3d at 492–93. Thus, the trial court did not err by denying Whidden's motion to suppress. We overrule Whidden's sole point.

## IV. CONCLUSION

Having overruled Whidden's sole point, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL:  LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 10, 2011